UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDDIE PERKINS,

              Petitioner,

v.                                  CASE NO.: 05-CV-72891-DT
                                  HONORABLE PATRICK J. DUGGAN

MILLICENT WARREN,

              Respondent.

_____/

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan on February 14, 2008.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
                     U.S. DISTRICT COURT JUDGE

Petitioner Eddie Perkins has filed a *pro se* application for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. In his habeas petition, Petitioner attacks his state court

convictions on nine grounds. Respondent urges the Court to deny the habeas petition,

contending that Petitioner's claims are procedurally defaulted or lack merit. For the

reasons that follow, the Court denies Petitioner's request for habeas relief.

## I.     Introduction

Petitioner was charged in Wayne County, Michigan with first-degree murder in

violation of MICH. COMP. LAWS ANN. § 750.316, assault with intent to commit murder in

violation of MICH. COMP. LAWS ANN. § 750.83, and possession of a firearm during the

commission of a felony in violation of MICH. COMP. LAWS ANN. § 750.227b.  The

Michigan Court of Appeals summarized the facts leading to these charges as follows:

> On August 4, 2000, Larry Hollie was driving a black vehicle
> in which defendant[] Shawn Davis[] and Derrick Fowler were
> passengers. Hollie drove up to a parked vehicle occupied by
> two strangers, James McCrary and Bruce Cooper.  After
> speaking with Akeia Williams, an acquaintance who was
> standing outside the vehicles, Hollie asked McCrary if he
> could look at his vehicle's engine.  When McCrary agreed,
> Hollie and his three passengers exited their vehicle armed
> with handguns and long guns.  Witnesses identified defendant
> as being armed with two handguns, and claimed that he shot
> both McCrary and Cooper in their legs through the T-top of
> McCrary's vehicle.  Cooper testified that he was able to crawl
> out of McCrary's vehicle after being shot in the leg.  He
> stated that he positioned his head under the vehicle because he
> feared being shot in the head.  McCrary pleaded for the four
> men not to kill them.  Multiple gunshots were then fired.
> Cooper received four more gunshots.  An autopsy revealed
> that McCrary sustained nineteen gunshot wounds.  McCrary
> died from his injuries.
>
> Defendant and his accomplices fled the area in the black
> vehicle. Shortly thereafter, police officers observed the black
> vehicle disregard a stop sign and gave chase.  During the
> chase, one officer noticed an object being tossed from the
> black vehicle.  Upon further investigation of that area, the
> police discovered a nine-millimeter semi-automatic handgun.
> The driver of the black vehicle eventually lost control of the
> vehicle and crashed.  Defendant was arrested after he was
> observed fleeing from the black vehicle.  The police
> confiscated a rifle that was located on the ground by the black
> vehicle.  A firearms identification expert testified that casings
> taken from the handgun and the rifle matched some of the
> casings found in the vicinity of McCrary's vehicle.

*People v. Perkins*, Nos. 235921 and 235922, at *2 (Mich. Ct. App. Oct. 23, 2003)

(unpublished opinion).

Petitioner was tried with Larry Hollie and Shawn Davis in Wayne County Circuit Court. Davis had a separate jury, but Petitioner and Hollie were tried before the same jury. On April 26, 2001, the jury found Petitioner guilty as charged. The jury was unable to reach a unanimous decision with respect to Hollie.

The trial court sentenced Petitioner to two years in prison on the felony firearm conviction, followed by concurrent terms of life imprisonment on the murder conviction and thirty to sixty years in prison on the assault conviction. The Michigan Court of Appeals affirmed Petitioner's convictions on October 23, 2003. *Id.* On April 30, 2004, the Michigan Supreme Court denied Petitioner leave to appeal. *People v. Perkins*, 470 Mich. 858, 679 N.W.2d 74 (2004) (table). Petitioner filed a request for reconsideration which the Michigan Supreme Court denied on August 31, 2004. *People v. Perkins*, 471 Mich. 874, 685 N.W.2d 671 (2004) (table). Petitioner filed his habeas corpus petition on July 22, 2005.

Petitioner raises the following grounds in support of his request for habeas relief:

I.    Petitioner was denied his state and federal constitutional rights to confrontation and fair trial where the nontestifying co-defendant's redacted statement was admitted as substantive evidence against Petitioner without an adequate indicia of reliability.

II.   The prosecutor's misconduct throughout the trial violated Petitioner's right to due process of law and a fair trial as guaranteed by both the federal and state constitutions.

III.  Petitioner was denied the right to present a

3

defense and a fair trial where the appointment of an independent DNA expert was made during the trial and the expert was not able to retest the DNA material but only review the results of the Detroit police crime laboratory while allowing the prosecution as much time as needed to prepare their DNA report and file it after the jury trial had commenced in violation of Petitioner's right to due process.

IV. Petitioner was denied a fair trial where the trial court failed to exclude DNA evidence where the prosecution did not comply with the discovery order in violation of due process of law.

V. Petitioner was denied his constitutional right to effective assistance of counsel, therefore he is entitled to a new trial and/or evidentiary hearing.

    A. Defense counsel's failure to object to the admission of the non-testifying co-defendant's statement to police as substantive evidence constitutes ineffective assistance of counsel.

    B. Defense counsel's failure to object to irrelevant and prejudicial DNA evidence denied Petitioner of his right to effective assistance of counsel.

    C. Petitioner was denied effective assistance of counsel where trial counsel failed to properly investigate and advance the defense of misidentification.

VI. The trial court's erroneous jury instructions deprived Petitioner of his due process right to a

properly instructed jury and a fair trial
guaranteed by both the state and federal
constitutions.

VII.   Petitioner was denied his right to a fair and
impartial jury where the court recessed the trial
for over a week to accommodate a planned
vacation.

VIII.   There was insufficient evidence as a matter of
law to support Petitioner's conviction of
premeditated murder in the first degree.

IX.   The cumulative effect of the foregoing errors
denied Petitioner of a fair trial in violation of
due process of law requiring reversal.

Respondent argues in an answer to the habeas petition that Petitioner's second, fourth,

sixth, and seventh claims are barred from review due to Petitioner's failure to object to

the alleged errors at trial.  Respondent asserts that Petitioner's third and ninth claims are

not cognizable on habeas review and that the state court's rejection of Petitioner's

remaining claims did not result in an unreasonable application of clearly established

Supreme Court precedent.

## II.    Standard of Review

Petitioner is entitled to a writ of habeas corpus only if he can show that the state

court's adjudication of his claims on the merits–

(1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law,
as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in

5

the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413, 120 S. Ct. at 1523. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410, 120 S. Ct. at 1522 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409, 120 S. Ct. at 1521.

Section "2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455, 125 S. Ct. 847, 853 (2005) (quotation marks and citations omitted). Pursuant to subsection (e) of this section, the state court's factual findings are presumed to be correct unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Moreover, a habeas court's "review is

conducted in light of the law as it existed at the time of the final state court decision . . .

unless an intervening constitutional decision announces a 'watershed' rule of criminal law

with implications for the fundamental fairness of the trial proceeding." *Baze v. Parker*,

371 F.3d 310, 318 (6th Cir. 2004) (citing *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060

(1989) and *Caspari v. Bohlen*, 510 U.S. 383, 396, 114 S. Ct. 948, 956 (1994)).

## III.     Applicable Law and Analysis

### A.  The Admission of Co-Defendant Larry Hollie's Statement to Police (Claim I)

Petitioner alleges that his rights under the Confrontation Clause were violated

when co-defendant Larry Hollie's pretrial statement to the police was admitted as

substantive evidence against Petitioner.  Hollie did not testify, but his redacted statement

to the police was read into the record by Officer Miguel Bruce, in part as follows:

| | |
|---|---|
| Question: | Mr. Hollie, tell me what happened on August [4, 2000] in front of 2682 Alexandrine? |
| Answer: | I pulled my car -- I pulled my car up next to his car.  I asked him was this his car.  He said yeah, someone put it together for me.  I asked - - I asked him if I could check it out.  He said yeah. I got out of the car and looked at the car.  I turned to walk back to my car and I saw Shawn leaning into the window and getting the AK that was in the front seat.  I then walked to my car and as I was getting into the car I heard shots.  I jumped in and laid on the floor board until he was trying  to get into the passenger door. |
| Question: | Who all was -- who all was in the car with you? |
| [Answer:] | Him, Shawn Davis, Derrick Fowler. |

[Question:]    Who all had guns in the car? . . .

Answer:    Everybody.  I had an AK and I do not - - I do
not remember what everybody else had.

Question:    Did you see - - did you shoot your gun?

Answer:    No.  Because I saw the girls standing there and
they knew me.

(4/12/01 Tr. at 134.)  Officer Bruce testified that Hollie refused to sign the statement.  (*Id*.)

During deliberations, the jurors asked whether they could consider police testimony about

Hollie's unsigned statement and the trial court answered in the affirmative.  (4/24/01 Tr.

at 4-10.)

Petitioner challenged the admission of Hollie's statement in his direct appeal.  The

Michigan Court of Appeals agreed that Hollie's statement was not substantively

admissible against Petitioner.  However, because Petitioner's attorney agreed to the

redaction of Hollie's statement and did not object to its admission at trial, the appellate

court limited its review to Petitioner's related claim that the trial court erroneously denied

Petitioner's request for an instruction informing the jury that the statement only could be

used when considering the charges against Hollie.  The court of appeals concluded that

the trial court erroneously refused to give a limiting instruction, but that the error was

harmless as there was overwhelming evidence that was properly admitted at trial of

Petitioner's guilt.

The Sixth Amendment "guarantees to a criminal defendant the right 'to be

confronted with the witnesses against him.'"  *Danner v. Motley*, 448 F.3d 372, 377 (6th

Cir. 2006) (quoting  U.S. Const. amend. VI).  In *Bruton v. United States,* 391 U.S. 123, 126, 88 S. Ct. 1620, 1622 (1968), the Supreme Court held that a nontestifying co-defendant's pretrial statement may not be admitted against another defendant at their joint trial even if the trial court instructs the jurors not to consider the incriminating statement in determining the nonconfessing defendant's guilt.  Stated differently, "where two defendants are tried jointly, the pretrial confession of one cannot be admitted against the other unless the confessing defendant takes the stand."  *Richardson v. Marsh,* 481 U.S. 200, 206, 107 S. Ct. 1702, 1707 (1987).  An exception exists when "the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence."  *Id.* at 211, 107 S. Ct. at 1709.

Courts have warned that care should be taken when using redacted confessions of a co-defendant.  As the Sixth Circuit has held, a redacted statement violates the *Bruton* rule when the redacted statement virtually compels the inference that the substituted word is a reference to the defendant.  *Stanford v. Parker*, 266 F.3d 442, 456 (6th Cir. 2001) (quoting *Hodges v. Rose*, 570 F.2d 643, 647 (6th Cir. 1978)).  "[T]he obvious deletion [of the defendant's name] may well call the jurors' attention specially to the removed name.  By encouraging the jury to speculate about the reference, the redaction may overemphasize the importance of the confessions' accusation -- once the jurors work out the reference."  *Gray v. Maryland*, 523 U.S. 185, 193, 186, 118 S. Ct. 1151, 1155-56 (1988).

Hollie's statement to the police constituted hearsay and Petitioner was unable to

cross-examine Hollie about the statement because Hollie did not testify.  The trial court nevertheless permitted Hollie's statement to be used against Petitioner.  Although Petitioner's name was replaced with the pronouns "he" and "him," it must have been obvious to the jury from the use of the other defendants' names that the pronouns were a reference to Petitioner.  The redaction did not eliminate all references to Petitioner's existence.  Therefore, under *Bruton* and its progeny, Hollie's statement was not admissible against Petitioner.[1]

*Bruton* errors are subject to harmless error analysis.  *Schneble v. Florida*, 405 U.S. 427, 430, 92 S. Ct. 1056, 1059 (1972).  Therefore, the question is whether the state court's conclusion that the admission of Hollie's statement was harmless error is contrary to, or an unreasonable application of, Supreme Court precedent.

On habeas review of a state-court judgment, "an error is harmless unless 'it had substantial and injurious effect or influence in determining the jury's verdict.'"  *Fry v. Pliler*, __ U.S. __, 127 S. Ct. 2321, 2325 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631, 113 S. Ct. 1710, 1718 (1993) (internal quotation marks omitted)).  The Court must use this standard to assess the prejudicial impact of Hollie's statement on Petitioner's jury even if the state court reviewed the error under a different standard.  *Id.*

---

[1]Because the Court finds that Hollie's statement was not admissible under *Bruton*, the Court need not consider whether the statement also was inadmissible under *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004).  *Crawford* neither overruled *Richardson* nor expanded the holding of *Bruton.  United States v. Lung Fong Chen*, 393 F.3d 139, 150 (2d Cir. 2004), *cert. denied*, 546 U.S. 870, 126 S. Ct. 372 (2005).

at 2328.  If the Court has a "grave doubt" and finds itself in "virtual equipoise as to the

harmlessness of the error," it must treat the error as if it had a substantial and injurious

effect on the factfinder.  *O'Neal v. McAninch*, 513 U.S. 432, 435, 115 S. Ct. 992, 994

(1995).  The Court may not grant habeas relief "if the state court simply erred in

concluding that the State's errors were harmless; rather, habeas relief is appropriate only

if the [state courts] applied harmless-error review in an 'objectively unreasonable'

manner."  *Mitchell v. Esparza*, 540 U.S. 12, 18, 124 S. Ct. 7, 12 (2003) (quoting *Lockyer*

*v. Andrade*, 538 U.S. 63, 75-77, 123 S. Ct. 1166 (2003)).

Two eyewitnesses to the crime, Sharonda and Akeia Williams, identified Petitioner

at a pretrial line-up and at trial as the man who exited the rear passenger side of the black

vehicle that contained McCrary's and Cooper's assailants.  They knew Petitioner from the

neighborhood and through Petitioner's sister.  Akeia noticed that Petitioner had a

handgun in each hand when he exited the vehicle.  Although she was not sure who did the

shooting, she claimed that Petitioner was one of three men standing by the victims' car

when the shooting occurred.  A third eyewitness, Larry Spreight, identified Petitioner at

trial as the man who was shooting at McCrary.  Cooper also identified Petitioner at trial

as one of the assailants that shot him and McCrary in the legs.

Officers Michael Malone and Charo Turner testified that they were traveling near

the crime scene when they saw a black vehicle disregard a stop sign and drive through an

intersection.  The officers pursued the black vehicle in their police car, reaching speeds of

fifty to sixty miles per hour.  The black vehicle eventually crashed into a fence and three

men exited the car and fled. One of the men subsequently apprehended by the officers was Petitioner. Two guns were found near the black vehicle. An expert witness testified at trial that these guns fired some of the casings found near the victims' vehicle.

In light of the strength of the admissible evidence against Petitioner, Hollie's statement placing Petitioner at the crime scene armed with a gun was cumulative and harmless evidence. Therefore, the admission of Hollie's statement was not necessary to establish an element of the offense and it was not essential to the prosecution's case. *Cf.*, *Hill v. Hofbauer*, 337 F.3d 706, 718-20 (6th Cir. 2003); *Fulcher v. Motley*, 444 F.3d 791, 811 (6th Cir. 2006); *Dorcy v. Jones,* 398 F.3d 783, 791 (6th Cir. 2005). Thus the Court concludes that the state court's finding of harmless error was objectively reasonable. Petitioner is not entitled to relief on the basis of his first claim.

**B.     Petitioner's II, VI, and VII Claims**

In his second ground for habeas relief, Petitioner alleges that the prosecutor engaged in misconduct throughout the trial resulting in the violation of Petitioner's constitutional rights to due process and a fair trial. Petitioner specifically complains about the prosecutor's comments and questions during *voir dire*, opening statements, and closing arguments.

In his sixth ground for habeas relief, Petitioner claims that the trial court's jury instruction on reasonable doubt was erroneous and deprived Petitioner of his constitutional rights to due process and a properly instructed jury. Petitioner contends that the jury instruction was inadequate because it defined "reasonable doubt" "by its own

terms" and required only a "fair doubt" as opposed to a "moral certainty" or a doubt that would cause a person to "hesitate to act" in making an important decision.

In his seventh claim in support of his petition, Petitioner alleges that the trial court's adjournment of the trial for ten days to accommodate the judge's vacation plans deprived Petitioner of a fair trial and impartial jury. Petitioner contends that the jurors could not be expected to remember all the relevant evidence during the adjournment and that there was a danger that jurors would be exposed to outside influences during the break.

The Michigan Court of Appeals reviewed Petitioner's second, sixth, and seventh claims for plain error because Petitioner did not object to the alleged errors at trial.[2] A state appellate court's review for plain error constitutes enforcement of a state procedural rule. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). Consequently, Respondent argues that the claims are procedurally defaulted.

A procedural default is "a critical failure to comply with state procedural law, . . ." *Trest v. Cain*, 522 U.S. 87, 89, 118 S. Ct. 478, 480 (1997). A federal habeas court is barred from considering a state prisoner's procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the

---

[2]Michigan's contemporaneous-objection rule requires defendants to make timely and specific objections at trial in order to preserve their claims for appellate review. *See People v. Carines*, 460 Mich. 750, 761-65, 597 N.W.2d 130, 137-39 (1999); *People v. Grant*, 445 Mich. 535, 546, 520 N.W.2d 123, 128 (1994). Petitioner did not object to the prosecutor's remarks, to the jury instruction on reasonable doubt, or to the trial court's adjournment of the trial.

alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991).

In his reply to Respondent's answer, Petitioner implies that his trial attorney was "cause" for his procedural default. Constitutionally ineffective assistance of counsel is "cause" for a procedural default. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986). However, the doctrine of exhaustion of state remedies "generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Id*. at 489, 106 S. Ct. at 2645. Petitioner raised three claims of ineffective assistance of trial counsel before the state courts. None of the claims alleged that trial counsel was ineffective for failing to object to the prosecutor's comments, to the jury instruction on reasonable doubt, or to the trial court's adjournment of the trial. Thus, ineffective assistance of counsel cannot serve as "cause" for Petitioner's procedural default. Because he has not shown "cause," the Court need not determine whether Petitioner was prejudiced as a result of the alleged error. *Smith v. Murray*, 477 U.S. 527, 533, 106 S. Ct. 2661, 2666 (1986); *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000).

Petitioner may overcome his procedurally defaulted claim, even in the absence of "cause and prejudice," on a showing of actual innocence. *Lott v. Coyle*, 261 F.3d 594, 620 (6th Cir. 2001) (citing *Schlup v. Delo*, 513 U.S. 298, 314-15, 115 S. Ct. 851, 861

(1995) and *Herrera v. Collins*, 506 U.S. 390, 417, 113 S. Ct. 853, 869 (1993)). This narrow exception requires the habeas applicant to demonstrate that the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388, 124 S. Ct. 1847, 1849 (2004); *Carrier*, 477 U.S. at 496, 106 S. Ct. at 2649. "To be credible, such a claim requires [the] petitioner to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." *Schlup*, 513 U.S. 324, 115 S. Ct. at 865. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327, 115 S. Ct. at 867.

Petitioner has not submitted any new and credible evidence from which a reasonable juror could conclude that he is not guilty of murder, assault with intent to commit murder, or felony firearm. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to adjudicate the merits of Petitioner's second, sixth, and seventh claims. Those claims are procedurally defaulted.

### C.      Petitioner's Claims Relating to the DNA Evidence (III and IV)

Petitioner alleges that the prosecutor violated a pretrial discovery order by not producing a report on the analysis of DNA evidence until after the trial commenced.[3]

---

[3]Although Respondent argues that this claim also is procedurally defaulted, defense counsel made a contemporaneous objection to the late production of the DNA report. The Court therefore declines to find that the claim is procedurally defaulted.

"[H]abeas review does not ordinarily extend to state court rulings on the admissibility of evidence." *Fuson v. Jago,* 773 F.2d 55, 59 (6th Cir. 1985). Further, a prosecutor's alleged violation of a discovery rule or order is not cognizable on habeas review unless it results in a constitutional violation, such as a denial of the defendant's right to a fair trial. *See Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002). The more difficult question is Petitioner's related argument that the trial court deprived him of his right to a fair trial and to defend himself when the court refused to adjourn the trial so that Petitioner's court-appointed expert could re-test the DNA material.

A defendant's right to due process in a criminal trial is, "in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S. Ct. 1038, 1045 (1973). "[T]he state cannot, in the name of policing the discovery process, arbitrarily stifle a defendant's efforts to offer vital evidence." *Tyson v. Trigg*, 50 F.3d 436, 444 (7th Cir. 1995) (citing *Taylor v. Illinois*, 484 U.S. 400, 409, 108 S. Ct. 646, 653 (1988)). "The right to present a defense, however, is not absolute. . . . [T]he exclusion of evidence in a criminal trial 'abridge[s] an accused's right to present a defense' only where the exclusion is 'arbitrary or disproportionate to the purpose[ ] [it is] designed to serve.'" *Forensic v. Birkett*, 501 F.3d 469, 475-76 (6th Cir. 2007) (quoting *United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261 (1998)) (internal quotation marks and citation omitted). Moreover, under the standard of review for habeas cases as enunciated in Section 2254(d)(1), it is not enough for a habeas Petitioner to show that the state trial court's decision to exclude potentially helpful

evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins*, 341 F. 3d 507, 511-12 (6th Cir. 2003).

A trial court's failure to grant a continuance to enable a defendant to exercise his constitutionally protected right to present a defense "may, in some circumstances, constitute a denial of due process." *Mackey v. Dutton*, 217 F.3d 399, 408 (6th Cir. 2000) (citing *Bennett v. Scroggy,* 793 F.2d 772, 774 (6th Cir. 1986)). The decision whether to grant a continuance, however, is within the discretion of the trial court. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S. Ct. 841, 849-50 (1964). The determination of whether the trial court's exercise of that discretion in denying a requested continuance violates due process depends upon the circumstances presented, particularly the reasons presented at the time as to why the continuance was necessary. *Id*. The Sixth Circuit has provided the following additional guidance to habeas courts considering a challenge to the trial court's failure to grant a continuance:

> "When a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process." *Brown v. O'Dea,* 187 F.3d 572, 580 (6th Cir. 1999) (quoting *Bennett,* 793 F.2d at 774). To warrant habeas relief, "[t]here must also be some showing that granting the continuance would have furthered the court's attempt to secure a just determination of the cause." *Bennett,* 793 F.2d at 775. [The Sixth Circuit has] considered the following factors in determining whether an accused was deprived of his

right to due process by a denial of a motion for a continuance: "the diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony." *Id.* at 774 (quoting *Hicks v. Wainwright,* 633 F.2d 1146, 1149 (5th Cir. 1981)) (internal quotation marks omitted).

*Mackey*, 217 F.3d at 408; *see also Broom v. Mitchell*, 441 F.3d 392, 414 (6th Cir. 2006) (explaining that the denial of a motion for continuance amounts to a constitutional violation only if there is an unreasonable and arbitrary insistence on expeditiousness in the face of a justifiable request for delay and the defense is actually prejudiced by the denial of the continuance) (citations omitted).

On the Friday before Petitioner's trial was scheduled to commence, Petitioner's counsel requested a delay in the trial to allow for independent DNA testing of clothing recovered after the August 4, 2000 shooting. The trial court authorized funding for an independent defense DNA expert, but refused to delay the trial to allow the expert to conduct independent testing of the materials as such testing would take four to six weeks to complete.

Cathy Carr, a forensic serologist at the Detroit Police Crime Laboratory, conducted the DNA testing of the materials recovered after the shooting which included a black

glove, a white glove, and a black knit hat.[4]  At trial, she testified that Petitioner could not

be excluded as the source of DNA found on the palm of the black glove, the thumb of the

white glove, and the black knit hat.  (4/12/01 Tr. at 161-95.)  She further testified that the

possibility that the DNA came from someone other than Petitioner was very small.  (*Id*.)

Petitioner's trial counsel cross-examined Ms. Carr but did not produce the defense expert

to comment on her analysis.

Although Petitioner's defense was misidentification, the trial court's denial of his

request for a continuance to obtain independent DNA testing was not arbitrary given that

the request was made on the eve of trial and Petitioner failed to proffer how such testing

would help his defense.  Moreover, the Court does not believe that the denial of

Petitioner's request actually prejudiced his defense in light of what the testing conducted

by the state's laboratory established and the other evidence introduced establishing

Petitioner's identity as one of the shooters.

As set forth in Section A, a number of eyewitnesses identified Petitioner as one of

McCrary's and Cooper's assailants.  Police officers identified Petitioner as one of the

individuals who fled the black vehicle and as the individual they apprehended following a

subsequent foot chase.  Even if the trial court had granted a continuance to allow

Petitioner's expert time to conduct independent DNA analysis and that test excluded

---

[4]Other articles of clothing were tested, however, no DNA material was recovered from
those articles or none of the individuals from whom blood samples were provided in the case
were the source of the DNA material found.

Petitioner as a possible source of the DNA material on the gloves and hat recovered from the black vehicle, those results would not have cast doubt upon the evidence that Petitioner was one of the perpetrators. In other words, while those hypothetical results perhaps would have excluded Petitioner as the owner or wearer of the articles of clothing recovered from the black vehicle, they would in no way suggest that Petitioner was not in the car and or that he was not one of the shooters. Therefore, the Court finds that the state appellate court's conclusion that Petitioner was not deprived of his right to present a defense and a fair trial due to the trial court's denial of his request for a continuance was neither contrary to nor an unreasonable application of Supreme Court precedent.

### D.    Petitioner's Ineffective Assistant of Trial Counsel Claim (V)

Petitioner alleges that he was denied his constitutional right to effective assistance of trial counsel. The Michigan Court of Appeals reviewed this claim on the merits but was unpersuaded that relief was warranted. To prevail on his ineffectiveness claim, Petitioner must demonstrate that the state court's conclusion was contrary to or an unreasonable application of the Supreme Court's decision in *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052 (1984).

In *Strickland*, the Supreme Court outlined that an attorney is ineffective if the attorney's "performance was deficient" and "the deficient performance prejudiced the defense." *Id.* at 687, 104 S. Ct. at 2064. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S. Ct. at 2046. The defendant must show "that counsel made errors so serious that

20

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S. Ct. at 2064.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068.

Petitioner asserts that his trial counsel was ineffective due to his failure to object to the admission of Hollie's statement to the police on the ground that the statement did not possess an "adequate indicia of reliability" and violated Petitioner's rights under the Confrontation Clause. Although defense counsel did not object to the admission of Hollie's redacted statement (4/12/01 Tr. at 133), counsel did request an instruction charging the jurors not to use the statement against Petitioner. Counsel argued that *Bruton* and *Richardson* prohibited the use of Hollie's statement as substantive evidence of Petitioner's guilt. (4/13/01 Tr. 8.) The trial court denied counsel's request, claiming that the statement was admissible against Petitioner and Hollie.

The trial court's denial of defense counsel's motion for a limiting jury instruction suggests that the court would have rejected a motion to exclude Hollie's statement on reliability or constitutional grounds. In any event, as explained previously, admission of the confession was harmless error. Thus, even if defense counsel's performance was

21

deficient, the deficiency did not prejudice Petitioner's defense.

Petitioner also contends that his trial counsel was ineffective due to his failure to object to the admission of DNA evidence as irrelevant, confusing, and of minimal probative value. Defense counsel attempted to exclude the evidence on the basis that the prosecutor's submission of the evidence was untimely and prevented the defense from conducting an independent analysis. Defense counsel also sought an adjournment in the trial for the purpose of having a defense expert independently analyze the evidence.

Although defense counsel did not argue that the DNA evidence was irrelevant, confusing, and of minimal probative value, this Court believes such arguments would have failed. The evidence was relevant in that it tended to establish Petitioner's presence in the black car. Further, the jury could have concluded from the evidence that Petitioner and his co-defendants intended to use the gloves and knit hats to disguise themselves and to prevent detection of their identities. The evidence was not confusing, for it was explained in such a way that lay people could understand it. The Court therefore concludes that defense counsel was not ineffective for failing to make the argument that the DNA evidence was irrelevant, confusing, and of minimal probative value. In any event, for the reasons discussed in the preceding section, the Court cannot conclude that the admission of the evidence prejudiced Petitioner's defense.

The third and final basis for Petitioner's ineffectiveness of counsel claim is defense counsel's alleged failure to properly investigate and advance the defense of misidentification. Petitioner asserts that his attorney should have requested an expert

witness, who could have testified about the dynamics of eyewitness identification.

"[A] habeas petitioner does not have a constitutional right to the presentation of expert testimony on the reliability of eyewitness identification." *Buell v. Mitchell*, 274 F.3d 337, 359 (6th Cir. 2001). The Sixth Circuit "has held on at least two occasions that the failure of counsel to hire an expert in eyewitness identification did not prejudice the defendant in a criminal trial." *Forensic*, 501 F.3d at 483 (citing *Dorch v. Smith*, 105 Fed. Appx. 650, 653 (6th Cir. 2004) and *Tipton v. United States*, No. 96-5026, 1996 WL 549802, at *1-2 (6th Cir. Sept. 26, 1996)). Furthermore, the identification of Petitioner was not a close call in this case.

As set forth previously, four eyewitnesses identified Petitioner as one of the shooters. Two of those individuals, Sharonda and Akeia Williams, knew Petitioner previously from the neighborhood and through his sister. A third eyewitness, Spreight, testified that he was certain that Petitioner was the person who shot McCrary. The surviving victim, Cooper, testified that Petitioner shot him and McCrary. Police officers identified Petitioner as one of the individuals who exited and ran from the black car after it crashed and who was subsequently apprehended. Finally, it is noteworthy that, although Petitioner's counsel did not seek an expert witness, he did challenge the eyewitnesses' identification testimony on cross-examination. Therefore, defense counsel's failure to request an expert witness on identification did not amount to deficient performance and, given the strength of the evidence against Petitioner, the alleged deficiency did not prejudice the defense.

For the above reasons, the Court concludes that Petitioner has failed to show that his trial attorney was ineffective. Therefore, the state court's rejection of Petitioner's ineffective assistance of counsel claim was neither contrary to nor an unreasonable application of *Strickland*.

**E.  Whether There Was Sufficient Evidence to Support Petitioner's First-Degree Murder Conviction (VIII)**

Petitioner alleges that there was insufficient evidence presented at trial to support his conviction for premeditated murder. Petitioner argues that the fatal shooting was done impulsively and that there was no evidence of either planning or prior contact with the victims. The Michigan Court of Appeals disagreed with Petitioner's assessment of the evidence and concluded that the evidence was sufficient for a reasonable jury to find premeditation.

The United States Supreme Court has held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970). "A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)). "Th[is] standard must be applied with explicit reference to the substantive

elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16,

99 S. Ct. at 2792 n. 16.  When making this evaluation, a habeas court does not reweigh

the evidence or redetermine the credibility of the witnesses.  *Matthews v. Abramajtys*, 319

F. 3d 780, 788-89 (6th Cir. 2003).  "It is the province of the fact-finder to weigh the

probative value of the evidence and resolve any conflicts in testimony" *Id*.  Therefore,

"[t]he mere existence of sufficient evidence to convict defeats a petitioner's claim."  *Id*.

To demonstrate a defendant's guilt of first-degree murder in Michigan, the

prosecution must establish that the defendant intentionally killed the victim and that the

act of killing was deliberate and premeditated.  *Scott v. Elo*, 302 F. 3d 598, 602 (6th Cir.

2002) (citing *People v. Schollaert*, 194 Mich. App. 158, 486 N.W.2d 312, 318 (1992)).

The Michigan Court of Appeals has provided the following explanation of deliberation

and premeditation:

> To premeditate is to think about beforehand; to deliberate is to
> measure and evaluate the major facets of a choice or problem.
> [P]remeditation and deliberation characterize a thought
> process undisturbed by hot blood.  While the minimum time
> necessary to exercise this process is incapable of exact
> determination, the interval between initial thought and
> ultimate action should be long enough to afford a reasonable
> man time to subject the nature of his response to a "second
> look."

*People v. Morrin*, 31 Mich. App. 301, 329-30, 187 N.W.2d 434, 449 (1971).

Premeditation and deliberation may be proved by circumstantial evidence.  *See People v.*

*Herndon*, 246 Mich. App. 371, 415, 633 N.W.2d 376, 404 (2001).  Factors to considers

include "(1) the previous relationship between the defendant and the victim; (2) the

defendant's actions before and after the crime; and (3) the circumstances of the killing itself, including the weapon used and the location of the wounds inflicted." *People v. Plummer*, 229 Mich. App. 293, 300-01, 581 N.W.2d 753, 757 (1998) (internal and end citations omitted).

There apparently was no motive for the shooting in this case. Petitioner and his co-defendants apparently did not know the victims and they did not steal anything from them. Petitioner's and his co-defendants' actions, however, suggest that the murder of McCrary was premeditated and deliberated.

Witnesses testified that the incident began with a conversation between Hollie and Akeia Williams and Hollie's request to look at the engine of McCrary's car. Petitioner and the other two passengers in Hollie's car then jumped out of the car bearing weapons. Petitioner had a gun in each hand. He and the other defendants were dressed in black. Petitioner pointed both guns at the victims and told them to get out of their car. McCrary and Cooper held up their hands and pleaded for their lives.

The assailants first disabled McCrary and Cooper by shooting them in their legs. After being shot in the legs, Cooper crawled out of and partially under McCrary's car. Cooper testified that Petitioner then walked around to the side of the car under which Cooper was located and fired at him four more times. McCrary was shot nineteen times, including once in the head and once in the chest. Cooper was shot five times.

The Michigan Court of Appeals determined that a rational finder of fact could have concluded that Petitioner and his accomplices were acting pursuant to a

preconceived plan to kill McCrary and Cooper. This Court agrees and therefore concludes that the state court's determination was neither contrary to nor an unreasonable application of *Jackson*. Therefore, Petitioner is not entitled to habeas relief based on his insufficiency of the evidence claim.

### F. Cumulative Effect of Errors (IX)

In his ninth and final claim in support of his habeas petition, Petitioner alleges that the cumulative effect of the trial errors deprived him of a fair trial in violation of his constitutional right to due process of law. With respect to this claim, the Michigan Court of Appeals held that there were no errors of consequence which combined to deprive Petitioner of a fair trial and, therefore, the cumulative-error doctrine was inapplicable.

The United States Court of Appeals for the Sixth Circuit has held that constitutional errors which would not individually support habeas relief cannot be cumulated to support such relief. *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005). As the Court has concluded that Petitioner's first eight claims of constitutional error do not entitle him to habeas relief, there is no merit in Petitioner's final claim.

## IV. Conclusion

For the reasons set forth above, this Court holds that the state court's adjudication of Petitioner's claims did not result in an unreasonable determination of the facts and was neither contrary to nor an unreasonable application of Supreme Court precedent.

Accordingly,

**IT IS ORDERED**, that Petitioner application for a writ of habeas corpus is

**DENIED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Eddie Perkins, #366880
Thumb Correctional Facility
3225 John Conley Drive
Lapeer, MI   48446

Brad H. Beaver, Esq.